IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JEFFREY SCOTT RATCHFORD,
ADC #127515, et al.                                                                              PLAINTIFFS

v.                                              5:11-cv-00180-DPM-JTK

GLADYS M. EVANS,  et al.                                                          DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D. P.
Marshall Jr.  Any party may serve and file written objections to this recommendation.  Objections
should be specific and should include the factual or legal basis for the objection.  If the objection
is to a factual finding, specifically identify that finding and the evidence that supports your
objection.  An original and one copy of your objections must be received in the office of the United
States District Court Clerk no later than fourteen (14) days from the date of the findings and
recommendations.  The copy will be furnished to the opposing party.  Failure to file timely
objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or
additional evidence, and to have a hearing for this purpose before the District Judge, you must, at
the same time that you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.        Why the evidence proffered at the hearing before the District Judge (if such a
hearing is granted) was not offered at the hearing before the Magistrate Judge.

1

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

### I.      Introduction

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 133), to which Plaintiffs responded (Doc. No. 140).  Defendants filed a Supplemental Brief (Doc. No. 147) in Response to this Court's May 24, 2012 Order (Doc. No. 143), to which Plaintiffs responded (Doc. No. 154).  In addition, a non-party inmate, Tim Axelson, filed a Motion for Joinder as a party Plaintiff (Doc. No. 153).

Plaintiffs Ratchford, Butler, and Heffernan are state inmates incarcerated at the Varner Unit (VU) of the Arkansas Department of Correction (ADC).  Plaintiff Cunningham is a state inmate incarcerated at the Delta Regional Unit of the ADC.  At the time they filed this action against Defendants, all four Plaintiffs were incarcerated at the VU.  In their Complaint, Plaintiffs allege Defendants denied their access to the courts and their confidentiality of legal matters when they instituted a new computer usage policy at VU.  In addition, Plaintiffs claim Defendants retaliated against them in violation of their constitutional rights.  Plaintiffs ask for monetary and injunctive

relief from the Defendants, who are: Gladys Evans, the VU law library supervisor; Barbara Smallwood, VU business manager; James Banks, VU Warden;  and Ray Hobbs, ADC Director.

## II.     Facts/Claims

According to Plaintiffs' Complaint (Doc. No. 5) and their testimony at a preliminary injunction hearing on November 3, 2011,[1] the ADC installed an Inmate Word Processing System (IWPS) three years ago to enable inmates to use word processors in the Unit law libraries.  The ADC typing policy, Administrative Directive (AD) 06-30 (Doc. No. 142-1, pp. 1-2), permitted inmate typing on word processors, and the Varner Unit policy, VU 14.7.0, permitted inmates to request and be given permission to use the word processors for legal work on a first-come, first-serve basis. (Doc. No. 142-1, pp. 3-8.)  On June 23, 2011, Defendant Evans charged all four Plaintiffs with disciplinary violations, for using a password protection option on the documents they created on the word processors. (Id. at pp. 9-27.)    Following a hearing attended by Plaintiff Ratchford, the disciplinary charges filed against Ratchford, Heffernan, and Cunningham were dismissed, because the above-mentioned policies did not mention the use of passwords, and therefore, did not specifically forbid their use. (Id.)  The charge against Butler, however, was not dismissed, because he previously had been warned verbally about the use of passwords.  (Id at pp. 14-17.)

Defendant Banks then issued a Memo, dated June 24, 2011, which was directed to the entire VU inmate population. (Doc. No. 135-1, p. 1.)  According to that Memo, inmate access to the use of the word processors was suspended immediately because of the unauthorized use of passwords by inmates. (Id.)  Any inmate with a valid legal typing request was instructed to send the request or bring his legal document to Defendant Evans for pre-approval of typing, and the document would

---

[1]See Transcript, Doc. No. 106.

then be typed by one of the inmate law library clerks.  (Id.)  The Varner Unit policy (VU 14.7.0) then was revised to include these changes.  (See testimony of James Banks,  Doc. No. 148-1, p.47.)

In their Complaint (Doc. No. 5), Plaintiffs claim they saved numerous legal documents on the IWPS, to which they were denied access following the issuance of Defendant Banks' memo. They claim Defendants intended to gain access to their confidential information by enacting this new policy, and to screen all inmates' legal work by forcing inmates to present their documents to Defendant Evans for pre-approval of typing.  As such, they allege a denial of access to the courts, together with violations of their privacy rights.  They also challenge the constitutionality of the revised policy as not reasonably related to legitimate penological interests, as set forth in Turner v. Safley, 482 U.S. 78, 89 (1987).  Finally, they claim that Defendants improperly retaliated against them by filing the disciplinary charges against them and by transferring Plaintiff Ratchford to a different barracks and Plaintiff Butler to the Varner Super Max Unit.

Following the November 3, 2011 Hearing, this Court denied Plaintiffs' Motions for preliminary injunctive relief, finding that they failed to show that the suspension of the old policy and institution of the new policy caused them an actual injury with respect to their on-going legal claims (Doc. No. 75).[2]  The Court noted that Plaintiffs did not claim they were denied access to using the other resources available in the law library, or the typing services provided by inmate clerks.  The Court also found no threat of irreparable harm with respect to their allegations that Defendant Banks intimidated and harassed them, or that Defendant Banks retaliated against Plaintiff Ratchford by transferring him to a different barracks.  The Court directed Defendants to ensure that

---

[2]The Court adopted the Proposed Findings and Recommendations by Order dated January 13, 2012 (Doc. No. 88), and the decision was affirmed on appeal (Doc. No. 151).

Plaintiffs received copies of all legal documents saved on the IWPS, and denied Plaintiffs' Motion for Class Certification.

## III.   Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See  Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A.     Official Capacity

The Court agrees with Defendants (and Plaintiffs did not object), that the Plaintiffs' claims for monetary relief against them in their official capacities should be dismissed, pursuant to sovereign immunity.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 65-66 (1989), and Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997).

**B.     Access to the Courts**

Defendants next state that Plaintiffs' denial of access to the courts claims should fail, because they cannot show how the new computer usage policy caused actual injury to any of their legal claims.  The Court previously noted that inmates do not possess a constitutional right to use a computer, and the alternatives provided to them (hand-writing complaints or submitting them to the law library clerks for typing) sufficiently ensure access to the courts.  Defendants state that at this point, Plaintiffs Ratchford and Cunningham have abandoned any files they stored on the IWPS by failing to provide their passwords and properly request their files, and that Plaintiff Cunningham is no longer located at the VU.  Furthermore, Plaintiff Butler was previously provided with copies of requested documents.

Plaintiffs state in response that the new computer usage policy set forth in Banks' memo directly conflicts with the ADC policy by prohibiting the use of passwords to protect documents. They also state this new policy fails to pass the test set forth in Turner v. Safley, 482 U.S. at 89, because it is not reasonably related to legitimate penological interests.  They claim that Defendants are invading their privacy rights by requiring inmates to submit documents for prior approval before typing by an inmate law library clerk.

 In Bounds v. Smith, 430 U.S. 817, 828 (1977), the United States Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  This right of access was further defined in Lewis v. Casey, 518 U.S. 343, 351 (1996), where the court stated that an inmate alleging a denial of this constitutional right must show "actual injury."  This injury can not

be established by alleging that the prison law library or legal assistance program "is subpar in some theoretical sense,"... but plaintiff  "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Id.

In addition, "[t]o prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury,..." King v. Blake, No. 4:08cv1050RWS, 2009 WL 4559276 *3 (E.D.Mo. 2009), quoting Hartsfield v. Nichols, 511 F.3d 826, 831-2 (8th Cir. 2008) (other citations omitted).   The Court in King also noted that the Eighth Circuit held that prison inmates do not have a constitutional right of access to a typewriter, and the Seventh Circuit concluded that inmates also do not have the right of access to a computer, citing American Inmate Paralegal Ass'n v. Cline, 859 F.2d 59, 61 (8th Cir. 1988) and Lehn v. Hartwig, 13 Fed. Appx. 389 (7th Cir. 2001).  The Court in King therefore concluded that two inmates who alleged denial of access to the courts because they were not allowed to use a computer for legal work and the internet for legal research, failed to support their claims because they did not provide evidence of having suffered an actual injury as a result.  See also Pyron v. Ludeman, Civil Nos. 10-3759 (PJA/JJG), 10-4236 (PJS/JJG), 2011 WL 4393523 (D. Minn. 2011), where inmate plaintiffs complained that prison officials unlawfully limited the amount of data they could store on a computer network and the type of electronic storage devices they could use.  The court held that the protections of the First Amendment do not extend to permit inmates to store electronic information in a particular medium and in an unlimited amount.  (Id. at p. 5.)

Following the preliminary injunction hearing, this Court ruled that Plaintiffs failed to show

that the Defendants' actions in discontinuing inmates' personal usage of the law library computers caused them actual injury to their legal claims.  (Doc. No. 75, pp. 10-11).   At the hearing, Plaintiff Ratchford testified that after Defendant Banks issued the June 24, 2011 memo, he was summoned to Banks' office, where he was told he could retrieve the files he needed.  Ratchford stated he chose not to retrieve his files because the files he needed were incomplete and he wanted to be able to complete them on the word processor.  He also admitted he hand-wrote the present complaint, an amended complaint, and numerous motions, without the use of a computer.  Plaintiff Butler stated that he did retrieve some of his documents from the IWPS following the meeting with Defendant Banks, and that although he came close to missing a deadline on one of his legal cases, his sister typed documents for him and the judge on his case provided him with extra time in which to submit documents.  Plaintiff Heffernan stated following suspension of the usage of the system, he was able to obtain assistance from another inmate to type his criminal case appeal, and that Defendant Evans helped him timely file it with the Arkansas Supreme Court.   Plaintiff Cunningham also testified he did not miss any deadlines when access to the computers was suspended.

Since the hearing, Plaintiffs have provided no further evidence of having suffered an actual injury to a legal case as a result of Defendants' actions.   The new word processor usage policy, VU 14.7.0 (rev. 9/22/10), permits inmates who wish to have legal documents typed to submit a request to Defendant Evans.   (See Defendant Evans' hearing testimony, Doc. No. 148-1, pp. 103-4.)  Upon approval, an inmate clerk will type the requested document and the inmate will be permitted to review it and request edits. (Id.)  Defendants also released a memo on August 29, 2011, which sets forth the typing requirements of various courts, together with the procedures inmates should follow when requesting typing services.  (Doc. No. 142-1, p. 36.)  Therefore, absent a showing of an actual

injury by Plaintiffs,  Defendants are entitled to judgment as a matter of law on this claim.

In addition, the Court finds that as a matter of law, the new policy does not violate Plaintiffs' privacy rights.  They allege that the new policy is simply Defendants' method of trying to review their documents and gain unfair advantages in legal proceedings filed against them.  (Doc. No. 154, p. 4.)  They also claim that  the "ADC" printed, copied, and distributed copies of Plaintiff Butler's unfiled § 1983 complaint after obtaining his password.  (Id. at p. 6.)  Plaintiffs admit, however, that they can hand-write documents to submit to the courts without submitting them to anyone's review for typing, and the Court finds they have done so more than adequately in this case.  Defendants Banks and Hobbs both testified that they have no concerns over what inmates sue them, and that it would not be to their advantage to look at the numerous documents prepared by numerous inmates. (Doc. No. 148-1, pp. 28, 35.)  In addition, Plaintiffs fail to set forth any specific facts involving any of the named Defendants in the alleged distribution of Plaintiff Butler's lawsuit, or in any of the other Plaintiffs' legal actions.[3]  In Pyron v. Ludeman, supra, the Court found no violation to a right to privacy where the inmates were given prior notification that officials could monitor or access any system activity at any time.  2011 WL 3293523 * 6.

## B. Constitutionality

Defendants maintain that the revised policy, which restricts inmate usage of the word processors and forbids the use of password protections, is reasonably related to legitimate penological interests, and therefore, passes constitutional muster, citing Turner, 482 U.S. at 89; and

---

[3]Cody v. Weber, relied on by the Plaintiffs, can be distinguished from this case, because Cody showed an actual injury after proving a number of instances where his legal papers were searched, copied, and read by prison officials.  256 F.3d 764, 768 (8th Cir. 2001).  However, in this case, Plaintiffs make no specific allegations against any of the named Defendants concerning the alleged distribution of Butler's, or any of the other Plaintiffs', documents.

Murphy v. Missouri Dep't of Corrections, 372 F.3d 979, 982-6 (8th Cir. 2004).   In support, they refer to Defendant Hobbs' hearing testimony, where he testified about concerns with inmates' use of computers to send threats to the court; to recruit inmates for gangs; to send threats to crime victims, other inmates, or staff; and to orchestrate assaults or smuggling of contraband through the use of code words.  (Doc. No. 148-1, pp. 4-5.)  A prison's concern with security is a legitimate penological interest.  Herlein v. Higgins, 172 F.3d 1089, 1090 (8th Cir. 1999).  In challenging such, Plaintiffs must show that no legitimate governmental interest exists for the policy, and the burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

In applying the Turner factors to the revised word processor policy, Defendants state that their concern over security is a legitimate penological interest and that inmates have other alternatives to exercise their constitutional rights, by hand-writing documents or submitting them to law clerks for typing.  They state no ready alternative to the policy exists, and that accommodating Plaintiffs' requests for personal, password-protected usage would impose more than a de minimis cost to the ADC prison system, in terms of computer upgrades and extra manpower needed to regulate usage and ensure secure daily operation and management of the prison.  Finally, Defendants state that the courts should give due deference to the judgment of prison officials in this situation, citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Murphy, 372 F.3d at 987; and  Hamilton v. Shriro, 74 F.3d 1545, 1150 (8th Cir. 1996).

Plaintiffs state Defendants foolishly imply that the word processing system was used by inmates to send secret messages to other inmates of other Units, and that such is "ludicrous." (Doc. No. 154, p. 2.)  Because Defendants cannot prove that such "covert activity" occurred, Plaintiffs

10

state they cannot support their claim of a legitimate penological interest.  (Id. at p. 3.)  They also state that the revised Varner Unit policy directly and improperly conflicts with an ADC policy, AD 06-30, which does not mention the use of passwords, and which provides inmates access to word processors.  (Doc. No. 142-1, pp. 1-2.)

The Court finds that the Varner Unit revised policy comports with the Turner factors, and is reasonably related to a legitimate penological purpose.  First, prison security is a valid penological objective, and Defendant Hobbs listed numerous security concerns associated with inmate use of password-protected files and word processors.  Defendant Banks also testified that the motivation for his June 24, 2011 Memo and the revisions to the word processing policy, was the discovery – over the course of several months – of letters, songs, gambling tickets, NCAA and football brackets in inmate files on the word processors.  (Doc. No. 148-1, p. 57.)  Given the purpose of the policy (and AD 06-30), of providing inmates with access to the processors for "legal use,", together with the testimonies of Defendants Hobbs and Banks, the Court finds a legitimate security interest presented in this case.  Second, the Court finds that Defendants provided Plaintiffs and all other inmates with alternative ways in which to exercise their rights, by submitting documents for typing or by hand-writing their documents.  Third (and fourth), the Court finds no realistic alternative to the revised policy, since permitting passwords would greatly increase the need for computer security equipment and permitting word processing usage would increase the need for staff to monitor usage, all of which would negatively impact guards, inmates and prison resources.

Being mindful that the violation of a state procedure or policy does not implicate the

Constitution,[4] the Court also finds that the revised Varner Unit policy does not improperly contradict the ADC word processor policy, AD 06-30.  That policy (AD 06-30) is "to provide inmates who are pursuing legal issues with <u>access</u> to typewriters, word processors and/or typing service, paper and other supplies in the law library."  (Doc. No. 142-1, pp. 1-2, emphasis added.)  By restricting usage of the computers to the typing services provided by the inmate law clerks, Defendants did not interfere with or impede access to the computers.  In addition, the added restriction on passwords did not contradict, but rather, clarified the policy.

"[W]hen the maintenance of institutional security is at issue, prison officials ordinarily must have wide latitude within which to make appropriate limitations."  <u>Rogers v. Scurr</u>, 676 F.2d 1211, 1215 (8th Cir. 1982).  The Court finds this case falls within that latitude, and that Defendants' revised policy included appropriate limitations.

## C.   Retaliation

Defendants state that Plaintiffs' retaliation claims are not supported by the facts or circumstances in this case.  Plaintiffs must show that the exercise of a constitutionally protected right was the motivation for alleged adverse actions by Defendants.  <u>Lewis v. Jacks</u>, 486 F.3d 1025, 1029 (8th Cir. 2007).  Defendants state Plaintiffs cannot bear the heavy evidentiary burden by merely alleging that an act was retaliatory.  <u>Meuir v. Greene County Jail Employees</u>, 487 F.3d 1115, 1119 (8th Cir. 2007).

Plaintiffs state Defendant Evans filed disciplinary charges against all four of them, and no other inmates who would have used passwords, only after Plaintiffs made it known that they were

---

[4]"[T]he mere violation of a state law or rule does not constitute a federal due process violation."  <u>Williams v. Nix</u>, 1 F.3d 712, 717 (8th Cir. 1993).

preparing to file complaints pursuant to 42 U.S.C. § 1983, one of which named Evans as a Defendant.[5]

The Court finds that Plaintiffs fail to bear their burden of producing evidence to support their retaliation claim against Defendants.  Defendants Banks and Evans both testified that they assumed that inmates were aware of an unspoken rule that passwords could not be used on the inmate word processors.  (Doc. No. 148-1, pp. 58, 109.)  The revised policy was instituted because of a misunderstanding among inmates about the use of passwords, and because many non-legal files were found on the word processors.  (Id. at pp. 56-7.)  Defendant Evans testified at the hearing that during the investigation about the use of passwords on the word processors, the four Plaintiffs' names were given to her as persons involved in using passwords, and that her supervisor (Mr. Gibson) told her to file disciplinary charges against them (Doc. No. 148-1, pp. 106-107).  She also stated she was not aware at the time that three of the four had lawsuits in the protected files on the word processor.  (Id. at p. 110.)  It is also clear that the disciplinary charges against Defendants Ratchford, Heffernan and Cunningham were dismissed, after it was determined that the old Varner Unit policy did not mention passwords.  (Id. at p. 109; Doc. No. 5, p. 6.)  Butler was convicted of the disciplinary, however, because he had previously been warned about using passwords.  (Doc. No. 5, p.6.)

Plaintiffs provide no evidence that Evans was aware of the lawsuits they were preparing, or that she specifically targeted charges against them because of those lawsuits.  The mere fact that

---

[5]Plaintiffs also allege in their Response (and not in the Complaint) that Butler's assignment to a different Unit and Ratchford's assignment to a different barracks, after they filed this lawsuit, was clear retaliation by Defendants.  However, this issue was raised in Plaintiff's preliminary injunction motions, and addressed and resolved by the Court in its' January 13, 2012 Order (Doc. No. 88).

the disciplinary charges were filed while Plaintiffs were preparing their lawsuits is insufficient to support their retaliatory claims.  "We have stated that '[g]enerally, more than a temporal connection ... is required to present a genuine factual issue on retaliation.'"  Kipp v. Missouri Highway and Transportation Comm'n, 280 F.3d 893, 897 (8th Cir. 2002), quoting Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999).  In addition, the Court notes that retaliation claims cannot be stated when the alleged retaliation arises from an actual violation of regulations or rules.  Cowans v. Warren, 150 F.3d 910, 911 (8th Cir. 1998).  Although the disciplinary charges were ultimately dismissed as to three of the Plaintiffs, none of them deny that they were using passwords to protect their files.  (Doc. No. 154, p. 9.)  Finally, the Court notes that Defendant Banks testified that he told Plaintiffs in July that they could retrieve their files from the word processors.  (Doc. No. 148-1, pp. 36, 66.)  Therefore, the Court finds as a matter of law that Plaintiffs' retaliation claims should be dismissed.

### D.    Qualified Immunity

Defendants also state they are protected from liability by qualified immunity, which shields a government official from suit in his or her performance of a discretionary function, unless the official's conduct violates a clearly established constitutional right, of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The Court finds a discussion of this defense to be unnecessary, in light of the conclusions reached above, that Defendants are entitled to judgment as a matter of law on Plaintiffs' claims against them.

## IV.    Motion for Joinder

Non-party inmate Tim Axelson moved to join as a Plaintiff in this action.  In light of the Court's decision on the Summary Judgment Motion, his Motion will be denied as moot.  If he

believes his Constitutional rights have been violated, he may file his own lawsuit pursuant to 42 U.S.C. § 1983.

**V.      Conclusion**

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 133) be GRANTED, and Plaintiffs' Complaint against Defendants be DISMISSED with prejudice.

IT IS FURTHER RECOMMENDED that the Motion for Joinder (Doc. No. 153) be DENIED as moot.

IT IS SO RECOMMENDED this 31st day of August, 2012.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE